UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSE LUIS GODOY, et al.,

    Plaintiffs,

    v.

COUNTY OF SONOMA, et al.,

    Defendants.

Case No. 15-cv-00883-WHO

**ORDER REGARDING MOTIONS TO DISMISS**

Re: Dkt. Nos. 56, 58, 59

## INTRODUCTION

Following their participation in protests over the killing of a friend, plaintiffs assert that they were unlawfully detained, seized, and mistreated by defendants, members of the Santa Rosa Police Department, the Sonoma County Sheriff's Office, and the California Highway Patrol. I previously granted Santa Rosa's motion to dismiss but allowed plaintiffs 90 days to do discovery to clarify the roles that each defendant played in this dispute. Dkt. No. 54. Plaintiffs then filed a Second Amended Complaint ("SAC"), Dkt. No. 55, and defendants again move to dismiss. I heard argument on January 6, 2016.

    Plaintiffs have still not plausibly alleged claims against the named defendants, except for the 42 U.S.C. § 1983 cause of action against Deputy Lupton (because he allegedly continued pointing a gun at plaintiff Godoy after Godoy was handcuffed) and the supervisory responsibility cause of action against Lupton's supervisor, Deputy Pederson, under 42 U.S.C. § 1983, because Pederson allegedly acquiesced in the constitutional violation. Otherwise, I GRANT defendants' motions to dismiss.[1]

---

[1] Plaintiffs have failed to allege any facts involving defendants Swartz, Corcoran, Meloche, Lazzarini, Harris, Gillotte, or Jones in this lawsuit. The claims against these defendants are DISMISSED WITH PREJUDICE.

**BACKGROUND**

Plaintiffs Jose Luis Godoy and minors L.M., K.A., and J.C. participated in protests of the killing of their friend, Andy Lopez. SAC ¶32 [Dkt. No. 55]. On January 9, 2014, they drove to L.M.'s home in Godoy's car after obtaining supplies to make posters for the protests. *Id.* ¶¶33, 34. After exiting Godoy's car, the plaintiffs were confronted by law enforcement officers "believed to be deputies of the Sonoma County Sheriff's Office and California Highway Patrol." *Id.* ¶33. The officers had their guns drawn and commanded the plaintiffs to "put your f---ing hands up, now!" and shined lights on them. *Id*. The officers then told the plaintiffs to drop or "get on the f---ing ground" and "get your asses on the ground." *Id*. The plaintiffs obeyed these commands. *Id.* Plaintiffs allege that Sonoma County Sheriff's deputy Fong and CHP Officer Ball conducted this initial stop jointly as part of a joint taskforce called MAGNET. *Id*. Defendant Pedersen is "on information and belief" the supervisor of the MAGNET program. *Id.* ¶34. Additional unidentified law enforcement officers subsequently arrived, handcuffed and searched the plaintiffs, and placed some in patrol cars. *Id.* ¶ 36.

L.M. was handcuffed while she was lying down by "pulling her hand back and away from her head, instead of down and towards her back," causing immediate pain in her neck, arm, shoulder and back. *Id.* ¶38. She felt additional pain "radiating from her neck to her shoulder and down her back" after following instructions by "deputies" about how to get up from the ground while handcuffed. *Id*. After being searched by a male officer, L.M. was then forced to stand, while handcuffed, for the majority of the three-hour detention. *Id*. ¶39. A "Sonoma County Deputy" tightened her handcuffs after she complained that they were too tight. *Id.* L.M. was not allowed to speak to her parents, who were nearby, during this detention and was forced to stand outside despite it being a "cool" night. *Id*. ¶40. L.M. was photographed and interrogated by "several different law enforcement officers," including Pedersen. *Id.* ¶42. Pedersen told her that she was now registered as a "gang member" and was on "gang terms." *Id*. She is not a gang member. *Id*. At some point "[e]arlier in the day" an "Asian Sonoma County Sheriff's deputy believed to be Defendant Fong" addressed L.M. by name and told her that "they" would see her

later. *Id*. ¶37.

K.A. received "similar treatment." *Id*. ¶43. She was searched and handcuffed by "an unknown law enforcement officers [sic] from the Sonoma County Sheriff's Office and CHP Officer Ball." *Id*. ¶44. During the handcuffing, her hand "was pulled back from her head" which caused her "pain and injury." *Id*. ¶45. She was left in the backseat of a police car for the three-hour detention. *Id.* ¶46. Officer Armando Jaurequi from the Santa Rosa Police Department turned on the car's air-conditioning after K.A. complained of being cold. *Id.* In addition, Officer Jaurequi tightened her handcuffs after she complained of the tightness. *Id.* Since the January 9th incident, K.A. experiences "pain in her back and has difficulty and discomfort when running." *Id*. ¶47. This injury stems from the "manner in which she was handcuffed and forced to get up off the street." *Id*.

J.C., who is male, "received similar treatment" as K.A. and L.M.[2] *Id.* ¶48.

Godoy "received the worst treatment." *Id.* ¶49. He was "verbally berated" by "Sonoma County deputies and Defendant CHP Officer Ball." *Id*. ¶50. As he was lying on the ground, "an unknown law enforcement officer, on information and belief an [sic] deputy from the Sonoma County Sheriff's department or Defendant Officer Ball" put a knee in his back and asked him "if he thought he was tough now." *Id.* As he lamented in pain, "an unknown law enforcement officer" asked him why he was crying. *Id.* At one point, Godoy was choked while "the other minor plaintiffs pleaded with the law enforcement officers to stop choking him." *Id.* After being escorted to a police car, Godoy was pushed into the car and "hit his head and also experienced pain in his back and arms." *Id.* Godoy requested medical assistance because he suffers from hypothyroidism and recently had surgery. *Id.* ¶51. The officers waited at least an hour before calling for medical assistance. *Id.*

Sonoma County Deputy Lupton pointed his gun at Godoy while Godoy was being searched and handcuffed and continued to point his gun at Godoy for a "period of time" after

---

[2] There are no specific allegations regarding J.C.; plaintiffs merely allege that he is male and "received similar treatment" as K.A. and L.M.

3

1  Godoy had been searched, handcuffed, and found not to be in possession of any weapons. *Id*. ¶52.
2  The gun pointing occurred "under the supervision and view" of Pedersen and Doe 1. *Id*. ¶53.
3  "Earlier that day and days prior," Godoy had contact with "various" Sonoma County Sheriff's
4  Office deputies, including Lupton. *Id*. ¶54. Lupton had identified Godoy in the local courthouse
5  "earlier" when Lupton told another officer, "That's him in the red shirt." *Id*. Lupton "removed"
6  Godoy from the courthouse by "literally pushing him repeatedly out of the courtroom, down the
7  stairs and out of the courthouse." *Id*. Once outside, Lupton and Godoy had a "verbal exchange"
8  wherein Lupton called Godoy a "child and told him to grow up." *Id*.

Plaintiffs allege that their treatment by the law enforcement officers was "in retaliation for their role in choosing to exercise their constitutional rights to exercise their freedom of speech, which included criticisms of the [Sonoma County Sheriff's Office] and [Santa Rosa Police Department] and their freedom of association." *Id.* ¶55. They allege causes of action for (i) violations of the First, Fourth and Fourteenth Amendment; (ii) supervisory responsibility; (iii) municipal liability for unconstitutional customs and practices; (iv) battery; (v) negligence; (vi) interference with exercise of civil rights; and (vii) failure to prevent constitutional violations and tacit collaboration.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

4

plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

**DISCUSSION**

Defendants from each law enforcement agency bring motions to dismiss, arguing that the allegations against them are insufficient to support each of plaintiffs' claims.

**I.   FIRST, FOURTH, AND FOURTEENTH AMENDMENTS (FIRST CAUSE OF ACTION)**

Plaintiffs allege violations of their First, Fourth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 against defendants Fong, Pedersen, Lupton, Ball, Jaurequi, and Does 1-5 and 11-16.[3] Section 1983 provides in relevant part, "[e]very person who, under the color of any statute ... subjects ... any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. A successful Section 1983 claim must establish: "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988) (citations omitted). The "first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citations omitted).

**A.   First Amendment**

To prevail on a First Amendment retaliation claim, a plaintiff "must provide evidence

---

[3] The SAC states that defendants are sued in their "individual and official capacities." SAC ¶25. However, as plaintiffs recognize, Ball Opp. at 5 [Dkt. No. 63], state actors cannot be sued in their official capacities under 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

5

showing that by his actions the defendant deterred or chilled the political speech and such deterrence was a substantial or motivating factor in the defendant's conduct." *Mendocino Env'tl Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks, citations, and modifications omitted). In assessing whether speech is chilled, courts look to "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities*." Lacey v. Maricopa Cty.*, 693 F.3d 896, 916 (9th Cir. 2012) (internal quotation marks and citations omitted). The plaintiff must allege specific facts ultimately enabling him to "prove the elements of retaliatory animus as the cause of injury, with causation being understood to be but-for causation." *Id*. at 917 (internal quotation marks and citations omitted).

Here, plaintiffs fail to sufficiently articulate the alleged basis for their First Amendment violation. Their complaint asserts that each plaintiff possesses the right to "freely express themselves" and to "associate with whomever they desired." SAC ¶58. But plaintiffs do not explain what right of association they are seeking.

The basis for their freedom of expression claim is similarly unclear. Plaintiffs allege that they were involved in protests regarding the killing of their friend and that on January 9, 2014, they were "continuing their efforts" in support of their friend. *Id*. ¶¶31, 32. At some point earlier in the day, "an Asian Sonoma County Sheriff's deputy, believed to be Defendant Fong," addressed L.M. by name, despite never having met her, and told her "that they would see her later." *Id*. ¶37. When Fong and Ball arrived on scene on January 9th, they were riding in the same car together. *Id*. ¶34. Additionally, "on a prior occasion after the protest activity began," Pedersen asked L.M. why she "had nothing to say about the law enforcement officers in Sonoma County and Santa Rosa." *Id*. ¶97. Plaintiffs allege that this comment was "unprofessional and an attempt to intimidate L.M." *Id*. In their opposition, plaintiffs argue that a reasonable inference can be drawn from these skeletal allegations that "Ball, a MAGNET member, had conversations with his partner Fong and his supervisor, Pedersen, and that Ball's conduct was in accord with the other MAGNET officers and the use of force was done in a manner to intimidate and silence" plaintiffs. Ball Opp. at 6 [Dkt. No. 63].

Without more information, I am unable to make plaintiffs' suggested inferential leap. As

6

pleaded, it is not clear that any of the defendants witnessed the plaintiffs' protesting activities or that defendants' conduct was in retaliation for these activities. The complaint does not specify when the Asian Sonoma County deputy, believed to be Fong, told L.M. he would see her later or whether he personally witnessed L.M.'s protesting activities. No context or date is provided for Pedersen's statement regarding L.M.'s views of law enforcement officers. As pleaded, plaintiffs K.A. and J.C. had had no prior interactions with any of the alleged officers. Although Lupton had "earlier" identified Godoy in a local courthouse and engaged in a verbal exchange with him, the only apparent connection between this incident and Godoy's protesting activities is that many other protesters were present in the courthouse at the same time. SAC ¶54. Whether Godoy was one of the protesters arrested, whether Lupton knew of Godoy's protesting activities, or whether this courthouse exchange is linked to Lupton's actions on the evening of January 9th remains unexplained. And it is unclear whether, and to what extent, defendants Jaurequi and Does 1-5 and 11-16's actions may have contributed to plaintiffs' alleged First Amendment violation. This claim is DISMISSED WITH LEAVE TO AMEND.

### B. Fourth Amendment[4]

Plaintiffs base their Fourth Amendment claim on the right to be free from "unreasonable seizures" and "excessive force by agents of the government." *Id*. ¶58. To determine whether a pleading states a Fourth Amendment cause of action, a court must determine whether there was a "seizure" under the Fourth Amendment, and whether that "seizure" was accomplished in an unreasonably dangerous or inappropriate manner. *See Tennessee v. Garner,* 471 U.S. 1, 7-8 (1985); *Robins v. Harum*, 773 F.2d 1004, 1009-10 (9th Cir. 1985). A "seizure" occurs when, by means of physical force or show of authority, officers have in some way restrained the liberty of a citizen. *Brower v. County of Inyo*, 489 U.S. 593, 595 (1989). Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful

---

[4] To the extent plaintiffs' alleged Fourteenth Amendment violations are based on the officers' use of excessive force, they must be analyzed under the Fourth Amendment standard. *Graham v. Connor*, 490 U.S. 386, 395 (U.S. 1989) (concluding "that all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach")

balance of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake. *Graham*, 490 U.S. at 396 (internal quotation marks and citations omitted).

### i. Defendant Jaurequi

The only allegations against Jaurequi are by K.A. Specifically, she alleges that in response to her complaints of being cold, Jaurequi increased the air conditioning. SAC ¶46. Additionally, Jaurequi tightened K.A.'s handcuffs even further after K.A. complained of the tightness. *Id*. Jaurequi argues these allegations are insufficient to support a Fourth Amendment violation because there must be "some measurable level of injury" before police conduct is actionable as excessive force. Jaurequi Mot. at 5 [Dkt. No. 59].

"It is well-established that overly tight handcuffing can constitute excessive force." *Wall v. Cty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004). Plaintiffs rely on *Wall* and *LaLonde v. County of Riverside*, 204 F.3d 947 (9th Cir. 2000) to argue that they have sufficiently stated a claim for this type of excessive force violation. However, in *Wall* the plaintiff claimed that handcuffs were placed "extremely tight" behind his back, he was picked up by his handcuffed arms, and thrown "upside down" and head first into the patrol car. 364 F.3d at 1109. The *Wall* court found that the handcuff restraint "hurt and damaged Wall's wrist." *Id*. at 1112. Similarly, in *LaLonde*, the plaintiff was grabbed by his ponytail, knocked backwards, pepper sprayed, and then left to sit on a couch with handcuffs that were too tight and pepper spray burning his eyes. 204 F.3d at 952. The day after the attack, LaLonde's left wrist and hand were numb and he continued to experience numbness in his arms and hands for an extended period of time. *Id*. at 953.

Here, K.A. alleges she was "injured by the tightness of the handcuffs" but no further information is provided. SAC ¶46. Notably, the alleged "pain in her back and difficulty and discomfort when running" does not appear to be related to the tightening of the handcuffs, but instead due to the "manner in which she was handcuffed and told to get up off the street," which apparently was not done by Jaurequi. *Id*. ¶47. Without further factual allegations detailing the specific nature of the injuries due to the tightening of the handcuffs, K.A. has not successfully stated her claim for a Fourth Amendment violation. *See Arpin v. Santa Clara Valley Transp.*

8

*Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (finding that plaintiff's excessive use of force claim was "unsupported as she does not provide any medical records to support her claim that she suffered injury as a result of being handcuffed."); *Fahy v. Tarbox*, No. 09-cv-1420-MMC, 2011 WL 3740769, at *3 (N.D. Cal. Aug. 25, 2011) (holding that "a claim for excessive force arising from the application of handcuffs requires a showing of injury."). This claim against Jaurequi is DISMISSED WITH LEAVE TO AMEND.

### ii. Defendants Lupton and Pedersen

Godoy alleges that Lupton pointed his gun at him while he was being searched and handcuffed and "also continued to point his gun at him for a period of time after he had been searched, found not to be in possession of any weapons and handcuffed." SAC ¶52. This states a claim. Pedersen is not alleged to have pointed his own gun at Godoy but that Lupton's gun pointing occurred "while under [Pedersen's] supervision and view." *Id*. ¶53. This does not state a claim.

The Ninth Circuit has established that the pointing of a gun at someone may constitute excessive force, even if it does not cause physical injury. *Robinson v. Solano Cty.*, 278 F.3d 1007, 1014-15 (9th Cir. 2002). In *Robinson*, officers pointed their guns at a man who was unarmed and cooperative after he identified himself as a misdemeanor suspect. 278 F.3d at 1010. The court considered that there was one suspect and multiple officers, the circumstances were not dangerous, and the possible charge was a misdemeanor to conclude that officers' use of force was unnecessary. *Id*. at 1011. Similarly, in *Tekle v. United States*, police officers held an 11 year-old boy at gunpoint during a narcotics raid that targeted the boy's parents. 511 F.3d 839, 845-47 (9th Cir. 2007). The Ninth Circuit held that officers acted unreasonably because the boy was minor, unarmed, outnumbered, and posed no threat. *Id*. at 848.

Here, plaintiffs allege that they were cooperative with the officers' commands, the gun was pointed at Godoy even after he was handcuffed and found not to be in possession of any weapons, and multiple officers were present during this incident. That is sufficient for Godoy to state a claim against Lupton. However, because Godoy does not allege that Pedersen directly participated in this incident, Pedersen cannot be held liable for Lupton's conduct simply for being

9

present at the scene. *Jones v. Williams*, 297 F.3d 930, 937 (9th Cir. 2002) ("[A]llowing the jury to find individual officers liable when there is no evidence to link them to specific actions would have been erroneous as a matter of law."). Liability against Pedersen for his supervisory role is addressed below in my discussion of plaintiffs' second cause of action for supervisory responsibility. Lupton's motion to dismiss this claim against him is DENIED. The claim against Pedersen is DISMISSED WITH LEAVE TO AMEND.

### iii. Defendants Fong and Ball

L.M. alleges that "an Asian Sonoma County Sheriff's deputy, believed to be Defendant Fong" took part in the stop, detention, search and handcuffing of plaintiffs. SAC ¶37. She alleges that as a result of the manner in which she was handcuffed she experienced pain down her neck, arm, shoulder, and back. However, L.M. is unable to attribute any of these injuries to Fong's actions. L.M. alleges that Fong "took part" in the January 9th incident but that she is unable to identify the individual who handcuffed her initially or who tightened her handcuffs when they were already "too tight." *Id*. ¶¶38, 39. Without more, L.M.'s allegations are insufficient to successfully state a claim for a Fourth Amendment violation against Fong.

Similarly, K.A. alleges she was searched and handcuffed by Ball and an unknown law enforcement officer from Sonoma County. *Id*. ¶44. During the handcuffing, K.A.'s hand was "pulled back from her head," causing her pain and injury. *Id*. ¶45. However, the officer who directly participated in the injury-producing event is unnamed. Additional allegations by Godoy that an unknown law enforcement officer *or* Ball placed a knee on his back are also insufficiently pleaded to fulfill the required individualized inquiry under Section 1983. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."). Plaintiffs have not plausibly stated a claim for a Fourth Amendment violation against Ball. The Fourth Amendment claim against Fong and Ball is DISMISSED WITH LEAVE TO AMEND.

## II. SUPERVISORY RESPONSIBILITY (SECOND CAUSE OF ACTION)

Plaintiffs assert this cause of action against defendant Pedersen and Does 1-20. A

supervisory official may be liable if (i) the supervisor was personally involved in the constitutional deprivation; (ii) there exists a sufficient causal connection between the constitutional violation and the supervisor's wrongful conduct; or (iii) the supervisor implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations and quotations omitted).  "The requisite causal connection can be established ... by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (internal modifications, quotation marks, and citations omitted).  "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1208 (internal quotation marks and citations omitted).

Pedersen argues that his "mere presence" at the scene and "within earshot and view of conduct" is not enough to attach supervisory liability to him under Section 1983.  Ball Mot. at 7 [Dkt. No. 58].  However, plaintiffs allege not only that Lupton pointed his gun at Godoy "under the supervision and view" of Pedersen, but also that Pedersen "was aware of [d]efendant Lupton's prior contacts with [p]laintiff Luis Godoy" and "did nothing to reprimand, retrain or otherwise discipline Deputy Lupton." SAC ¶¶53, 72.  Plaintiffs assert this failure to train or reprimand demonstrated "deliberate indifference" to the health, safety, and welfare of plaintiffs. *Id*. ¶74.  Defendants have not addressed plaintiffs' deliberate indifference allegations.  While Pedersen may have not personally participated in Lupton's gun pointing, Pedersen's conduct can plausibly be considered "acquiescence in the constitutional deprivation" or "knowingly refusing to terminate" actions which Pedersen reasonably should have known would result in a constitutional violation. *Starr*, 652 F.3d at 1207-08.  Accordingly, Pedersen's motion to dismiss this claim is DENIED.

### III.  MUNICIPAL LIABILITY (THIRD CAUSE OF ACTION)

Plaintiffs assert this cause of action against defendants County of Sonoma, City of Santa

Rosa, and Does 1-20. "[A] municipality cannot be held liable under [Section] 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). "Rather, the Supreme Court has required a plaintiff seeking to impose liability on a municipality under [Section] 1983 to identify a municipal policy or custom that caused the plaintiff's injury." *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1232-33 (9th Cir. 2011) (internal quotation marks and citations omitted). For a municipality to be liable, the plaintiff must establish "(1) that he or she possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy was the moving force behind the constitutional violation." *Miranda v. City of Cornelius*, 429 F.3d 858, 868 (9th Cir. 2005) (internal citations, quotations marks, and modifications omitted).

As I found in my previous order, plaintiffs continue to allege, without elaboration or reference to specific incidents, that the County of Sonoma and the City of Santa Rosa have a custom of arresting innocent members of the community, using excessive force, employing officers known to have propensities for mistreating citizens, and failing to punish officers for misconduct. SAC ¶78(a)-(f). These conclusory and generic allegations are inadequate to plead municipal liability under *Monell*. *See e.g.*, *Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (allegations "that Defendants 'maintained or permitted an official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs' that [plaintiff] elsewhere alleged" were insufficient where plaintiff "did not put forth additional facts regarding the specific nature of this alleged 'policy, custom, or practice'").

Plaintiffs' assertion that their complaint also includes "prior encounters" with Sonoma County deputies is insufficient to demonstrate the existence of an unconstitutional policy under *Monell* against Sonoma County, and is certainly not enough to establish liability against the City

1  of Santa Rosa.  Sonoma Opp. at 12 [Dkt. No. 62].  Plaintiffs' claim for municipal liability against
2  the County of Sonoma and the City of Santa Rosa is DISMISSED WITH LEAVE TO AMEND.

**IV.   BATTERY (FOURTH CAUSE OF ACTION)**

Plaintiffs bring this cause of action against defendants Fong, Pedersen, Lupton, Jaurequi, and Does 1-20.  "A battery is any intentional, unlawful and harmful contact by one person with the person of another."  *Piedra v. Dugan*, 123 Cal. App. 4th 1483, 1495 (2004).  The elements of a civil battery are: (1) "[d]efendant intentionally did an act which resulted in a harmful or offensive contact with the plaintiff's person"; (2) "[p]laintiff did not consent to the contact"; (3) "[t]he harmful or offensive contact caused injury, damage, loss or harm to the plaintiff."  *Id*.

**A.   Jaurequi**

Jaurequi argues that turning up the air conditioner is not a battery because he "did not touch the person of the plaintiff."  Jaurequi Mot. at 8.  However, "it is not necessary that he should bring any part of his own body in contact with another's person" in order to be liable for battery.  Restatement (Second) of Torts § 18 (1965).  A person may be liable "if he throws a substance, such as water, upon the other or if he sets a dog upon him."  *Id*.  "All that is necessary is that the actor intend to cause the other, directly or indirectly, to come in contact with a foreign substance in a manner which the other will reasonably regard as offensive."  *Id*.  Here, it is not clear whether the cold air produced by the air conditioning unit qualifies as a "foreign substance" for the purposes of a battery claim.  Without more information regarding the specific severity, duration, and effect on K.A. of the air conditioning, plaintiffs have not plausibly stated a claim for battery against Jaurequi.  This claim is DISMISSED WITH LEAVE TO AMEND.

**B.   Fong, Pedersen, and Lupton**

Plaintiffs allege that defendants Fong, Pedersen, and Lupton "without cause or provocation applied unnecessary and excessive force in handcuffing and detaining" the plaintiffs by "pulling and moving [p]laintiffs' arms in unnatural and inappropriate ways," "placing their knees in [p]laintiffs' [sic] back," and "forcing them to get up off the street while handcuffed in a manner that caused pain and injury." SAC ¶85.  But the factual allegations in the SAC do not support their claim.  For example, L.M. alleges that she was injured while getting up from the sidewalk

13

while handcuffed, but beyond alleging that she followed "the deputies" commands, no officers are identified. *Id*. ¶38. K.A. also alleges she was "searched and handcuffed" by an unknown officer and Ball. *Id*. ¶44. During the handcuffing, her "hand was pulled back from her head," causing pain and injury. *Id*. ¶48. But she is unable to identify who did this to her. Similarly, Godoy alleges that as he was laying on the ground, an unknown officer *or* Ball "placed on a knee on his back." *Id*. ¶50. Those allegations do not state a battery claim against Fong, Pedersen, or Lupton, and so that claim is DISMISSED WITH LEAVE TO AMEND.

## V. NEGLIGENCE (FIFTH CAUSE OF ACTION)

Plaintiffs assert this cause of action against defendants Fong, Pedersen, Lupton, Jaurequi, and Does 1-20.[5] "The elements of a cause of action for negligence are well established. They are (a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury." *Evan F. v. Hughson United Methodist Church*, 8 Cal. App. 4th 828, 834 (1992) (internal quotation marks, citations, and modifications omitted). As a general rule, individuals do not owe a duty to others, but "in limited circumstances, a special relationship may give rise to a duty by a public entity to protect a person falling within that relationship." *Munyua v. United States*, No. 03-cv-04538-EDL, 2005 WL 43960, at *8 (N.D. Cal. Jan. 10, 2005). "Special relationships are generally found where a public entity voluntary assumed a duty toward the injured party, the victim relied on a promise of protection by a public entity or the victim was dependent on the public entity for protection because the public entity either created the peril or lulled the victim into a false sense of security." *Id*.

Plaintiffs assert that a "special relationship" was created between plaintiffs and defendants when plaintiffs were taken into physical and legal custody. SAC ¶90. Defendants "breached their duty of care to [p]laintiffs when they applied an excessive amount of physical force" to plaintiffs,

---

[5] Plaintiffs' negligence claim includes references to actions taken by the County of Sonoma and the City of Santa Rosa. SAC ¶¶92, 93. However, plaintiffs do not bring this cause of action against the County of Sonoma or the City of Santa Rosa and the allegations involving the city and county are not addressed in any of the parties' briefs. To the extent that plaintiffs' negligence claim is based on negligent hiring or other actions purportedly undertaken by the County of Sonoma or the City of Santa Rosa, this claim is DISMISSED WITH LEAVE TO AMEND for failure to state a claim.

1  causing them injuries. *Id*. ¶91. Fundamentally, this claim fails because the SAC fails to allege
2  that defendants undertook any of their actions in a negligent manner. Despite plaintiffs'
3  arguments in their opposition brief that Jaurequi may have unintentionally activated the air
4  conditioning or negligently tightened K.A.'s handcuffs, the SAC contains only claims of
5  intentional behavior. *Compare* Santa Rosa Opp. at 4 [Dkt. No. 65] *with* SAC ¶46 ("In response to
6  this minor Plaintiff's complaint of being cold, the officer turned on the air-conditioning."); *Id*.
7  (The handcuffs "were tightened" by Jaurequi.). Considering the lack of negligence-based
8  allegations, plaintiffs' negligence claim is DISMISSED WITH LEAVE TO AMEND.

## VI. INTERFERENCE WITH CIVIL RIGHTS (SIXTH CAUSE OF ACTION)

Plaintiffs assert this cause of action against defendants Fong, Pedersen, Lupton, Jaurequi, County of Sonoma, City of Santa Rosa, and Does 1-20. California Civil Code section 52.1, also known as the Bane Act, prohibits interference or attempted interference "by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States." Cal. Civ. Code § 52.1. To prevail on a Bane Act claim plaintiffs must demonstrate that: (1) defendants "interfered with Plaintiffs' constitutional or statutory rights;" and (2) "that interference was accompanied by actual or attempted threats, intimidation or coercion." *Campbell v. Feld Entm't, Inc.*, 75 F. Supp. 3d 1193, 1211 (N.D. Cal. 2014) (citation omitted).

Here, plaintiffs claim defendants "knowingly interfered" through threats, intimidation or coercion, with the rights of plaintiffs "to exercise their right to freedom of speech and association." SAC ¶96. However, because plaintiffs have not established a violation of their constitutional rights by Fong, Jaurequi, County of Sonoma or City of Santa Rosa, this claim also fails against them. *See supra* Section I. To the extent the Bane Act claim against Pedersen and Lupton is based on the gun pointing allegations, plaintiffs have failed to demonstrate that this incident constitutes an "egregious" interference with their constitutional rights or that it was "deliberate or spiteful." *Shoyoye v. Cty. of Los Angeles*, 203 Cal. App. 4th 947, 959 (2012) (clarifying that the Bane Act "was intended to address only egregious interferences with constitutional rights, not just any tort. The act of interference with a constitutional right must

itself be deliberate or spiteful."); *see also Bender v. Cty. of Los Angeles*, 217 Cal. App. 4th 968, 981 (2013) ("Here, we hold a wrongful detention that is accompanied by the requisite threats, intimidation, or coercion – coercion independent from the coercion inherent in the wrongful detention itself that is deliberate or spiteful – is a violation of the Bane Act.") (internal quotation marks and citations omitted). This claim is DISMISSED WITH LEAVE TO AMEND.

## VII.  FAILURE TO PREVENT/INTERCEDE (SEVENTH CAUSE OF ACTION)

Plaintiffs assert this cause of action against all defendants and Does 1-20. "Pursuant to a long line of civil cases, police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *United States v. Koon*, 34 F.3d 1416, 1447 (9th Cir. 1994). However, a law enforcement officer may only be held liable for failing to intercede if he had a "realistic opportunity" to do so. *Cunningham v. Gates*, 229 F.3d 1271, 1290 (9th Cir. 2000).

At the outset, I note that although this cause of action is asserted against all defendants, only Ball, Jaurequi and the City of Santa Rosa bring motions to dismiss this claim. Based on the allegations in the complaint, City of Santa Rosa, Jaurequi, and Ball argue that it is difficult to assess *who* in the Santa Rosa Police Department or *when* Ball or Jaurequi failed to intercede. I agree. Plaintiffs respond only that Jaurequi knew that K.A.'s handcuffs were too tight but he failed to intercede by tightening them further. Santa Rosa Opp. at 6. This incident does not demonstrate that Jaurequi observed, or otherwise knew, that another officer placed the handcuffs too tight or that he had an opportunity to intercede to prevent the original tight handcuffing from occurring. This claim against Ball, Jaurequi and the City of Santa Rosa is DISMISSED WITH LEAVE TO AMEND.

# CONCLUSION

I previously gave plaintiffs 90 days to conduct discovery after dismissing their first amended complaint. For the reasons described above, defendants' motions to dismiss are GRANTED, except with respect to the First Cause of Action as to Lupton and the Second Cause of Action as to Pederson. At oral argument, plaintiffs asserted they could add pertinent allegations to strengthen their complaint. Any amended complaint should be filed within 20 days of this Order.

**IT IS SO ORDERED**.

Dated: January 22, 2016



WILLIAM H. ORRICK
United States District Judge

17